1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10    PAUL ASCHERL,                          CASE NO. C11-1298 MJP

11                        Plaintiff,         ORDER GRANTING PLAINTIFF'S
                                             MOTION FOR A PRELIMINARY
12          v.                               INJUNCTION

13    CITY OF ISSAQUAH,

14                        Defendant.

15

16          This matter comes before the Court on Plaintiff's motion for a preliminary injunction and

17   Defendant's motion for an extension of time.  (Dkt. Nos. 3 and 10.)  Having reviewed the

18   motions, the response (Dkt. No. 14), the reply (Dkt. No. 22), and all related filings, the Court

19   GRANTS Plaintiff's motion for a preliminary injunction and DENIES Defendant's motion for an

20   extension of time as moot.

21                                    **Background**

22          Plaintiff Paul Ascherl ("Ascherl") wants to distribute religious literature at the Salmon

23   Days Festival held in Issaquah, Washington.  (Dkt. No. 3-1, Ascherl Decl. ¶ 12.)  The festival

24   occurs every year on the first full weekend in October and is organized by the Greater Issaquah

ORDER GRANTING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION- 1

Chamber of Commerce ("Chamber") with support from the City of Issaquah ("the City"). Ascherl alleges the City's municipal laws prevent him from sharing his religious beliefs in violation of the First Amendment.  He seeks a preliminary injunction enjoining the City of Issaquah from applying Issaquah Municipal Code 5.40.040 to prevent him and others from engaging in literature distribution during the 2011 Salmon Days Festival.

The purpose of the Salmon Days Festival is to celebrate the return of the salmon and to promote the City to visitors.  (Dkt. No. 16, Kos Decl. ¶ 4.)  Each year the City grants the Chamber a special events permit for the festival and the Chamber, in turn, sells space along the City's streets and park facilities to temporary vendors.  (Dkt. No. 21, Kelley Decl. ¶¶ 6-7.) During the two-day event, the City closes parts of Front Street (from Dogwood Street to Newport Way NW) and Sunset Avenue (from Newport Way to 2nd Ave NE) to vehicular traffic.  (Id.) The festival attracts an estimated 150,000 people.  (Id. at ¶ 13.)

In 1999, the City felt it necessary to address pedestrian congestion issues caused during the Salmon Days Festival.  (Dkt. No. 19, Frisinger Decl. ¶¶ 8-9.)  In previous years, political candidates, including one traveling with a llama, carried large signs and repeatedly stopped people to give them campaign literature.  (Dkt. No. 19, Frisinger Decl. ¶ 3.)  The year before, for example, a political candidate brought a llama as a means of distributing campaign literature. (Id. at ¶ 4.)

The City passed an emergency ordinance regulating conduct during the Salmon Days Festival in 1999.  (Id. at ¶ 9.)  The emergency ordinance was followed by a permanent ordinance passed in April 2000.  (Dkt. No. 16, Kos Decl. ¶ 11.) As enacted, IMC 5.40.040 states:

"The City of Issaquah hereby establishes designated "expression areas" within

the festival area for leafleting, organized protesting, nonscheduled entertainment,

1    and nonprofit distribution.  These designated expression areas shall be located by

2    the Festival Events Division of the Greater Issaquah Chamber of Commerce in such

3    a way to minimize interference with the orderly flow of pedestrian traffic through

4    the festival area while still providing an area for members of the public to freely

5    express themselves.  The locations of the designated expression areas shall be subject

6    to approval by the City Council prior to Salmon Days."

7         Plaintiff argues IMC 5.40.040 violates the First Amendment on its face and as applied.

8    During the 2010 Salmon Days Festival, Ascherl alleges his First Amendment rights were

9    violated when he attempted to distribute religious literature last year near the intersection of

10   Front Street and NE Dogwood St.  (Dkt. No. 3-1, Asherl Decl. ¶ 15.)  After distributing literature

11   for five minutes, Pauline Middlehurst, a festival official ordered him to stop in 2010.  (Id. at ¶

12   22; Dkt. No. 18, Middlehurst Decl. ¶¶ 3-6.) When Middlehurst left to get police, Ascherl

13   continued to distribute literature for thirty minutes.  (Dkt. No. 3-1, Asherl Decl. ¶¶ 23-24.)

14   Eventually, the official returned with two Issaquah police officers who referred Asherl to IMC

15   5.40.040.  (Id. at ¶¶ 23-29; Dkt. No. 17, Wilson Decl. ¶¶ 3-4.)

16        The police officers told Asherl that he would be sanctioned if he continued to distribute

17   literature outside designated free speech zones.  (Dkt. No. 3-1, Asherl Decl. ¶ 29; Dkt. No. 17,

18   Wilson Decl. ¶¶3-4.)  In 2010, festivals organizers had established two free speech zones.  One

19   free speech zone was located close to the Front St. Stage where musicians were performing and

20   the other was located on West Sunset Way near the Issaquah Salmon Hatchery.  (Id. at ¶¶ 30-33.)

21   Asherl attempted to distribute literature at both zones, but felt the first zone was too noisy and

22   therefore precluded effective dialogue with passerbys and the second was too isolated, with few

23

24

people passing by at all.  (Id.)  Asherl discontinued his activities and left the Salmon Days

Festival.  (Id. at ¶ 35.)

Asherl seeks a preliminary injunction to prevent a similar incident when he returns to the

2011 Salmon Days Festival and subsequent festivals to distribute literature.

**Discussion**

1.  Preliminary Injunction

To obtain a preliminary injunction, Ascherl "must establish that he is likely to succeed on

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008).

a.  Likelihood of Success on the Merits

Under First Amendment jurisprudence, courts analyze speech regulations depending on

the forum: i.e., whether the forum is traditional, designated, or non-public. Perry Educational

Association v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 (1983).  Quintessential traditional

public forums are sidewalks, streets, and parks.  ACLU of Nevada v. City of Las Vegas, 333

F.3d 1092, 1099 (9th Cir. 2003).  In a traditional public forum, speech regulations are valid if

they pass the "time, place or manner" test, i.e., if they  (i) are content-neutral, (ii) narrowly

tailored to serve a significant governmental interest, and (iii) leave open ample alternative

channels for communication.  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); see also

Berger v. City of Seattle, 569 F.3d 1029, 1036 (9th Cir. 2009).

As an initial matter, there is no dispute that the Salmon Days Festival is held in a

traditional public forum and IMC 5.40.040 is content-neutral.  The City's ordinance regulates

conduct on streets and sidewalks and applies even-handedly to every organization or individual,

1    which attempts to distribute literature during the Salmon Days Festival regardless of viewpoint.

2    The parties' dispute largely turns on the latter two requirements, i.e., whether the city ordinance

3    is narrowly-tailored to serve a substantial government interest and whether it leaves open ample

4    alternative channels for communication.  The Court finds IMC 5.40.040 fails the requirement

5    that the statute be narrowly-tailored.  Because the time, place, and manner requirement is

6    conjunctive, the Court need not reach the issue of alternative channels of communication.

7         i.      Narrowly-Tailored

8         A regulation is "narrowly tailored" when it promotes a significant or substantial

9    government interest in a manner that would be achieved less effectively if the regulation did not

10   exist. Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 607 F.3d 1178 (9th

11   Cir. 2010).  While a content-neutral regulation need not be the least-restrictive or least-intrusive

12   means of regulating speech to survive First Amendment scrutiny, see Ward, 491 U.S. at 710, the

13   government's interest must be based on more than conjecture. Weinberg v. City of Chicago, 310

14   F.3d 1029, 1034 (7th Cir. 2002).

15        The City argues IMC 5.40.040 is narrowly tailored to serve public safety concerns,

16   minimize congestion, and facilitate the orderly flow of pedestrian traffic during the festival.  The

17   Court finds the City's argument unpersuasive.  First, the City's identified interests are based

18   more on conjecture than reality.  There is no evidence that leafleting by itself causes congestion

19   or prohibits the orderly flow of pedestrian traffic, let alone creates a public safety concern at the

20   Salmon Days Festival.  The City's argument that the Salmon Days ordinance "targets precisely

21   the activity … [Issaquah] seeks to legitimately ameliorate" is unpersuasive. (See Dkt. No. 15 at

22   11.)  Although the City argues IMC 5.40.040 was enacted in response to "unacceptably

23   disruptive activities" that had occurred at past festivals, those activities related to political

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION- 5

1   candidates carrying large signs, street musicians creating bottlenecks for pedestrian traffic, and

2   balloon vendors and jugglers blocking store fronts. (See Dkt. No. 19, Frisinger Decl. ¶¶ 3-6; Dkt.

3   No. 21, Kelley Decl. ¶ 15.)  While one administrator testifies that people leafleting at the Salmon

4   Day Festival causes people to slow down to accept handbills, stop and chat, bump into each

5   other, and spill their drinks, there is no testimony that the City received any actual complaints

6   about people leafleting.  (Dkt. No. 16, Kos Decl. ¶ 8.)  Even considering the possibility that

7   many others will also choose to engage in Ascherl's proposed activity, as the City argues, the

8   Court finds the distribution of literature from a fixed location is markedly less disruptive.  Since

9   the record does not show the City faced any pressing problems due to leafleting in prior Salmon

10  Days Festivals, the Court finds the City fails to do more than assert interests that are important in

11  the abstract. Turner Broad Sys. Inc. v. FCC, 512 U.S. 622, 664 (1994).

12      Second, the City's reliance on Heffron v. Internat'l Society for Kristna Consciousness to

13  argue bans on literature distribution are upheld in the festival context, is inapposite.  In Heffron

14  v. Internat'l Society for Krishna Consciousness, the Supreme Court upheld a regulation limiting

15  literature distribution during the Minnesota State Fair given that the regulation applied to a

16  temporary event where "the flow of the crowd and demands of safety [were] more pressing."

17  452 U.S. 640, 651 (1981).  However, the Minnesota State Fair in Heffron was held in a limited

18  public forum, i.e., on public fairgrounds where attendees were required to pay a fee for

19  admission.  Id.

20      In contrast, the Salmon Days Festival occurs on sidewalks and streets that remain open to

21  the public. (Dkt. No. 3-1, ¶¶ 13-14.)  As the Sixth Circuit observed in Saieg v. City of Dearborn,

22  641 F.3d 727 (6th Cir. 2011), the government's interest in crowd control and safety is

23  undermined when it leaves adjacent sidewalks open for typical non-Festival pedestrian traffic

24

1   and sidewalk vendors that create just as much, if not more, congestion as compared to literature

2   distribution.  Id. at 737.  In Saieg, the Sixth Circuit struck down an ordinance that prevented a

3   Christian pastor from distributing religious literature on a sidewalk adjacent to a private

4   organization's Arab festival.  Id. at 739.  While the City attempts to dismiss Saieg as an out-of-

5   circuit case that does not apply the proper time, place, and manner test, the City's argument fails.

6   The Heffron court itself recognized "there are significant differences between a street and [ ]

7   fairgrounds."  Heffron, 452 U.S. at 651; see also N.A.A.C.P. v. City of Richmond, 743 F.2d

8   1346, 1355 fn. 8 (9th Cir. 1984)(observing Heffron made a distinction "between public streets

9   and the more limited public forum of a fairground").  Since the Salmon Days Festival occurs on

10  public streets that remain open for normal pedestrian traffic, the City's ordinance must be

11  narrowly-tailored to serve a substantial government interest.

12          Third, the City allows for much more congestive activities than leafleting during the

13  Salmon Days Festival, which undermines the credibility of its professed interest in minimizing

14  congestion and ensuring public safety.  Based on this record, the City allows people to dress up

15  in animal costumes, carry large signs, purchase and eat food, and perform music on its

16  downtown sidewalks and streets.  (Dkt. No. 22-1, Ascherl Decl., Ex. G.)  All of these activities

17  are more likely to cause congestion than allowing Ascherl and others to distribute literature.

18  The City has other options to reduce congestion.  For example, the City could increase the size of

19  the festival area to distribute participants over a large geographical area or the City could

20  lengthen the festival hours.

21          To the extent the City cites ACORN v. City of Phoenix, 798 F.2d 1260 (9th Cir. 1986),

22  and One World v. City and County of Honolulu, 76 F.3d 1009 (9th Cir. 1996), the City's

23  argument is misplaced.  In ACORN, the City of Phoenix was concerned with individuals

24

stepping into streets and soliciting funds from cars stopped at red lights. <u>ACORN</u>, 798 F.2d at

1262.  The Ninth Circuit upheld the ordinance based on the government's interest in traffic flow

and vehicular safety, but made a distinction between soliciting funds and distributing literature.

<u>Id.</u> at 1268.  To solicit funds, the court recognized a recipient must stop in order to receive the

message and will often times "'engender additional confusion …because [the] act[] [involves]

exchanging articles for money." <u>ACORN</u>, 798 F.2d at 1268 (citing <u>Heffron</u>, 452 U.S. at 665).

In <u>One World</u>, the Ninth Circuit upheld an ordinance barring non-profits from setting up display

tables so that they could sell T-shirts on Waikiki streets. 76 F.3d at 1011.  The court upheld

Honolulu's ordinance based on the government's interest in the aesthetic appearance of their

communities and in protecting local merchants from unfair competition.

    In contrast, distribution of literature is a much less disruptive activity than stopping cars

in the streets and setting up temporary vendor stations.  As recognized by the Supreme Court,

"[t]he distribution of literature does not require that the recipient stop in order to receive the

message the speaker wishes to convey; instead the recipient is free to read the message at a later

time.'" <u>Int'l Soc'y for Krishna Consciousness, Inc. v. Lee</u>, 505 U.S. 672, 690 (1992)(O'Connor,

J., concurring).  Courts routinely invalidate bans on literature distribution in traditional public

forums.  <u>See, e.g.</u>, <u>Int'l Soc'y for Krishna Conciousness, Inc. v. Lee</u>, 505 U.S. 672, 690

(1992)(striking a regulation banning leafleting while upholding a ban on solicitation of funds in

airports); <u>Gerritsen v. City of Los Angeles</u>, 994 F.2d 570, 577 (9th Cir. 1993)(invalidating a ban

on literature distribution in city park because there was no evidence that handbill distribution

interfered with park operations); <u>Lederman v. United States</u>, 291 F.3d 36 (D.C. Cir.

2002)(striking a regulation banning leafleting on a sidewalk near the Capitol Building).

1    As a final note, Plaintiff also argues IMC 5.40.040 is facially unconstitutional under the

2    "overbreadth" doctrine.  "An overbreadth claim is essentially a claim that a statute may be

3    constitutional as applied to the plaintiff but sweeps so broad as to unconstitutionally suppress the

4    speech of others not before the court."  Outdoor Media Group, Inc. v. City of Beaumont, 506

5    F.3d 895, 907 (9th Cir. 2007). Since the Court finds IMC 5.40.040 unconstitutional as applied to

6    Ascherl, the Court need not reach the issue of whether the ordinance is void on its face.

7    The Court finds Plaintiff is likely to succeed on the merits of his First Amendment claim

8    because IMC 5.40.040 is not narrowly tailored to address a substantial government interest.

9    ii.    Ample Alternative Channels for Communication

10    The Court does not decide whether the restriction on leafleting leaves Ascherl with ample

11    alternative methods of communication.

12    Any time, place, and manner restriction must leave open ample alternative channels by

13    which speakers can communicate their messages.  Ward, 491 U.S. at 791.  While they are not

14    entitled to the most effective means of communication, alternatives are not "ample" if the

15    speaker is not permitted to reach the intended audience.  Bay Area Peace Navy v. U.S., 914 F.2d

16    1224, 1229 (9th Cir. 1990).

17    Since the requirements for a time, place, and manner restriction are conjunctive and the

18    Court already determined IMC 5.40.040 is not narrowly-tailored, the ordinance unconstitutional

19    regardless if it leaves open ample alternative channels for communication.

20    b.    Irreparable Harm

21    "[A] party seeking preliminary injunctive relief in a First Amendment context can

22    establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence

23    of a colorable First Amendment claim."  Sammartano v. First Judicial District Court, 303 F.3d

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION- 9

959, 973 (9th Cir. 2002).  The loss of a constitutional right to speak is both actual and imminent, and such loss results in irreparable injury.  <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976).  Here, Ascherl has established the existence of a colorable First Amendment claim.  Since he would be continually prevented from exercising his First Amendment rights, the Court finds Ascherl will suffer irreparable harm without the injunction.

    c.  <u>Balance of the Equities</u>

The Court finds the balance of the equities also falls in Plaintiff's favor.  Given that the safety and congestion concerns are likely speculative, the City is "in no way harmed by issuance of a preliminary injunction which prevents it from enforcing a regulation, which, on this record, is likely to be found unconstitutional."  <u>Newsom ex rel. Newsom v. Albemarle County School Bd.</u>, 354 F.3d 249, 261 (4th Cir. 2003).

    d.  <u>Public Interest</u>

The Court finds the public interest is not served by the continued enforcement of IMC 5.40.040.  "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles."  <u>Sammartano</u>, 303 F.3d at 974.  While the public interest in maintaining a free exchange of ideas has in some cases been overcome by a strong showing of other competing public interests (for example, the safety and security of a nuclear testing site), no such showing is made here.  <u>See, e.g.</u>, <u>Hale v. Dep't of Energy</u>, 806 F.2d 910, 918 (9th Cir. 1986).

\\

\\

\\

\\

1 \\

2 \\

3                                      **Conclusion**

4          The Court GRANTS Plaintiff's request for a preliminary injunction because IMC

5  5.40.040 is unconstitutional as applied to Ascherl.  By banning leafleting and permitting other

6  more congestive activities, the Court finds IMC 5.40.040 is not narrowly-tailored to serve a

7  substantial government interest.  The City is enjoined from applying IMC 5.40.040 so as to

8  prevent Ascherl and other third-party speakers from engaging in literature distribution on public

9  sidewalks in downtown Issaquah during the 2011 Salmon Days Festival.

10         To the extent the City filed a motion for extension of time to file a responsive brief, the

11  Court DENIES the City's request as moot.  The clerk is ordered to provide copies of this order to

12  all counsel.

13         Dated this 21st day of September, 2011.

14

15

16

Marsha J. Pechman
United States District Judge

17

18

19

20

21

22

23

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION- 11